IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| | § |
| | §    SA-25-CR-388-XR |
| -vs- | § |
| | § |
| JAIME ALBERTO QUINTANILLA-CHAVEZ, | § |
| | § |
| *Defendant* | § |

## ORDER DENYING MOTION FOR RECONSIDERATION

On this day came on to be considered the Government's motion to reconsider the dismissal of the indictment in this case (ECF No. 65) and the Defendant's response (ECF No. 66).

### BACKGROUND

Defendant Jaime Alberto Quintanilla-Chavez was charged with forcibly opposing, impeding, or interfering with a federal officer in violation of 18 U.S.C. § 111(a)(1).[1] The Government sought an enhanced penalty of up to twenty years in prison under § 111(b) for "inflict[ing] bodily injury" on Homeland Security Investigations (HSI) Special Agent (SA) William Carl, who scraped his arm when he punched a hole in the Defendant's driver-side window.

The Court dismissed the indictment on October 20, 2025. *See United States v. Quintanilla-Chavez*, No. SA-25-CR-388-XR, 2025 WL 2982191, at *1 (W.D. Tex. Oct. 20, 2025), concluding that the government could not prove the charges beyond a reasonable doubt, suppressing body camera footage based on SA Carl's constitutionally excessive force, and finding outrageous government conduct that it determined required dismissal. In that Order, the Court noted the following facts:

---

[1] "(a) In General.—Whoever—
(1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties;"

1. Before any investigation into whether the Defendant was present in the country illegally, Homeland Security Investigations (HSI) noted that the Defendant would be an "easy target for weekend operations."

2. Immigration and Customs Enforcement (ICE) Deportation Officer (DO) Hector Hernandez did not document any of his alleged attempts to corroborate the information in the tip that was forwarded to him.

3. DO Hernandez did not seek an administrative warrant because he did not think a DHS officer would sign one without a notice of removal.

4. On the day of the Defendant's warrantless arrest, DO Hernandez never informed his team about the results of his investigation into the Defendant's immigration status (i.e., that there was no evidence of removability).

5. When agents stopped the Defendant's vehicle, they immediately began to point weapons at the Defendant.

6. When agents stopped the Defendant's vehicle, they never asked the Defendant any questions about his immigration status.

7. Although they had no warrant, agents immediately began trying to open the Defendant's car doors.

8. In less than a minute, SA Carl tells a TX-DPS officer, "Stand here. I'm going to go get my window break; I ain't got time for this."

9. Before SA Carl broke the car window, the Defendant's vehicle moved forward and still SA Carl proceeded to break the window, which caused the scrape on his arm.

10. The Government made no efforts to argue that there were any facts that would suggest that the Defendant's conduct involved anything but moving his car forward, and the Government made no argument that the Defendant directed force toward or against any officer.

11. The Government made no effort to argue that the Defendant initiated the physical contact in question by applying (or even threatening) force toward or against SA Carl's person.

12. The team forcibly extracted the Defendant from the vehicle. Multiple agents forced the Defendant to the ground and handcuffed him. Bleeding from the head and painfully handcuffed, the Defendant attempted to speak to officers in his native Spanish, but SA Carl told him to "Shut your f_____ mouth. Shut your mouth."

13. Only after the Defendant was handcuffed did Hernandez ask the Defendant questions about his immigration status.

14. The sworn affidavit in support of the criminal complaint was riddled with false statements.[2]

15. The Government's briefing and the officers' testimony suggest that the officers at the scene feared for their safety because they considered the location—a location they chose—to not be "immigration enforcement friendly," that they observed people filming them from across the street and heard someone yelling during the encounter, and because the Defendant made a call to an unknown person on his cell phone during the stop. The video footage does not show anyone else at the scene other than the Defendant and the officers, let alone people filming, yelling, or otherwise causing a disturbance. The sworn testimony on this issue was blatantly false.

---

[2] Special Agent Steven Fuentes of ICE, HSI, and the Department of Homeland Security (DHS) improperly swore that (1) the Defendant refused to "follow any commands" and (2) the Defendant "fought the law enforcement officers." Fuentes further improperly testified at the preliminary hearing that the Defendant was surveilled (and taken into custody) because he was subject to a Final Order of Removal from an Immigration Judge. In addition, despite HSI's sworn statement to the Magistrate Judge that the vehicle was stopped because of expired license plates, the Assistant U.S. Attorney conceded at a bond hearing in July 2025 that Fuentes had "misrepresented what was going on."

16. The demeanor of the officers, as shown in the videos, refutes any suggestion they were concerned about their safety.

The government now asks the Court to reconsider its rulings in all respects. ECF No. 65.

## DISCUSSION

### I. Legal Standard

Although the Fifth Circuit has not comprehensively set out the standard of review for a motion to reconsider in a criminal case, federal courts have borrowed from the civil context to arrive at a general standard prohibiting relitigating issues that have or could have been raised and requiring—as relevant here—a manifest error:

> Motions for reconsideration serve a narrow purpose. Such requests are often made, but granting the relief is rare, as it is an extraordinary remedy [and] should be used sparingly.
>
> Federal courts recognize only three possible grounds for any motion for reconsideration: (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, and (3) the need to correct a clear error of law or prevent manifest injustice.
>
> Motions for reconsideration are not to be used to relitigate old matters or to present evidence that could have been raised prior to entry of judgment. Whatever may be the purpose of [a motion for reconsideration] it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge.

*United States v. Lopez*, 817 F. Supp. 2d 918, 932–33 (S.D. Miss. 2011) (denying government's motion to reconsider order suppressing evidence) (cleaned up); *see also United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009). This is essentially the same standard the Fifth Circuit uses in civil cases. *See, e.g.*, *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 128 (5th Cir. 2019).

### II. Analysis

Federal Rule of Criminal Procedure 12(b)(1) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."

4

If a pretrial motion presents a question of law in a case involving undisputed facts, Rule 12 authorizes the court to rule on the motion. *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005), *abrogated on other grounds by Abramski v. United States*, 573 U.S. 169, 191 (2014); *see* FED. R. CRIM. P. 12(d) (permitting the court to rule on a motion involving factual issues provided the court states its essential findings on the record). Otherwise, the court would waste resources by allowing a case to proceed to trial and later dismissing it based on the same legal argument and facts presented through a pretrial motion. *See Flores*, 404 F.3d at 325. A pretrial motion to dismiss is "'capable of determination' if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense" raised by that motion. *United States v. Covington*, 395 U.S. 57, 60 (1969). Pretrial resolution is inappropriate, however, when the motion requires the Court to resolve questions of fact. *See United States v. Rafoi*, 60 F.4th 982, 994 (5th Cir. 2023); *United States v. Guthrie*, 720 F. App'x 199, 201 (5th Cir. 2018).

The government insists that the Court erred by dismissing the indictment because "the evidence was disputed and required factual findings in order to resolve evidentiary conflicts or ambiguities" and "by construing disputed facts against the government." ECF No. 65 at 2. But the government's motion makes no attempt to dispute any of the Court's factual findings. *See generally See generally id.* Rather, it suggests that the Court's characterization of the window breach as "barely perceptible in the body camera footage" somehow creates a factual dispute. *Id.* at 3. But the government offers no clue into the kind of fact question that footage would create, especially given its concession that the window break occurred as or just after the truck pulled away. *See* ECF No. 46 at 5; ECF No. 47 at 1–2; 8/25 Hr'g, GEX 1 at 2:25; ECF No. 60, 8/25 Hr'g Tr. at 78:24–25; *see Quintanilla-Chavez*, 2025 WL 2982191, at *8 ("SA Carl's *own* decision to smash the

5

window *as* the Defendant moved forward, does not, under these circumstances, render the forward movement 'force' directed *toward* or *against* an officer.").

The government also insists that "no time did [it] contend that it was making a full proffer of the evidence it would use at trial." ECF No. 65 at 4. But the government conceded in open court that its charge was only based on Agent Carl's cutting himself upon breaking the window as the Defendant drove forward. ECF No. 47 at 1–2; ECF No. 29, 7/10 Hr'g Tr. at 11–12. The government's motion does not describe any evidence that could possibly change the Court's ruling or identify any contested material fact. To be sure, Rule 12 requires the Court to construe disputed facts in the Government's favor. But the Court is under no obligation to *imagine* theoretical factual disputes that have never been articulated based on the Government's vague gesture to the possibility of other evidence. *See United States v. Lopez*, 817 F. Supp. 2d 918, 933 (S.D. Miss. 2011) ("If the Government believed that such evidence would have been helpful to its cause, then it should have adduced that testimony before the Court rendered its decision."). The Court's ruling that the government failed to state an offense was based on its resolution of two *legal* questions— whether slowly driving away from an officer can constitute force *against* or *toward* the officer 18 U.S.C. § 111 and whether a defendant can be liable under 18 U.S.C. § 111 for force initiated by an officer. *See Sophin v. United States*, 153 F. Supp. 3d 956 (W.D. Tex. 2015); *United States v. Williams,* 602 F.3d 313, 317–18 (5th Cir. 2010). The Court answered "no" to both questions. The government's mere disagreement with those rulings does not establish manifest error or create a factual dispute that must be sent to a jury.[3]

---

[3] The Court considered but declined personal sanctions against the federal officers in this case for their lack of candor, warning that it would not tolerate any further misrepresentations. The Government should not confuse the Court's leniency toward the individual officers in this case as a suggestion that the facts in this case are in dispute. They are not.

6

The government further asserts that SA Carl's use of the window break could not have constituted excessive force or an unreasonable expansion of the scope of the seizure because "agents can lawfully order drivers to exit their vehicles, [and] it follows that they can use reasonable force to execute those orders." ECF No. 65 at 5; *Helvie v. Jenkins*, 66 F.4th 1227, 1238 (10th Cir. 2023); *Graham v. Connor*, 490 U.S. 386, 396 (1989). While that is true as a general proposition in the context of a detention for a "*traffic violation*," the risks of such an encounter were never present in this stop, which, again, was premised on a *civil infraction*—unlawful presence in the United States. *Pennsylvania v. Mimms*, 434 U.S. 106 (1977) (per curiam) at 111 n.6)) (emphasis added); *Arizona v. United States*, 567 U.S. 387, 407 (2012) ("As a general rule, it is not a crime for a removable alien to remain present in the United States."). As the Supreme Court has explained, "the risk of a violent encounter in a traffic-stop setting 'stems not from the ordinary reaction of a motorist stopped for a speeding violation, but from the fact that evidence of a more serious crime might be uncovered during the stop.'" *Arizona v. Johnson*, 555 U.S. 323, 331 (2009) (quoting *Maryland v. Wilson*, 519 U.S. 408, 414 (1997)).

The officers here were not stopping an unknown driver based on a traffic violation; they were conducting a planned operation to apprehend a known individual to question him about his immigration status. The "risks" attendant to a normal traffic stop are simply not present here, and *Mimms* does not displace the requirement that "[t]he court must determine case by case whether the police were unreasonable in failing to use less intrusive procedures to conduct their investigation safely." *United States v. Sanders*, 994 F.2d 200, 206–07 (5th Cir. 1993); *see, e.g.*, *Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009).

Moreover, the officers cannot cite fear for officer safety as a justification for their escalating use of force when they unnecessarily invited conditions that could generate such fear.[4] *See Quintanilla-Chavez*, 2025 WL 2982191, at *4 ("[A]s to the location, the team made the unilateral decision to stop the vehicle at that location rather than, say, follow the Defendant and stop him at a 'friendlier' area on his way to work.").

The government now asserts that the officers had probable cause to arrest the Defendant under "*both* federal and state law." ECF No. 65 at 5–7 (citing 18 U.S.C. § 111(a) and Tex. Pen. Code § 38.04). As the Court has already explained, an officer cannot manufacture an offense for forcible resistance under Section 111 through his own use of force. *See Quintanilla-Chavez*, 2025 WL 2982191, at *21; *see also Adams v. Thompson*, 557 F. Supp. 405, 411 (M.D. La. 1983) (resistance, even physical resistance, to unlawful seizure does not give officer probable cause to seize for resistance); *United States v. Di Re*, 332 U.S. 581 (1948) ("One has an undoubted right to resist an unlawful arrest, and courts will uphold the right of resistance in proper cases."). The Court finds that the government has waived any state-law justification for the arrest by failing to raise it earlier. The Court previously solicited briefing on whether these federal agents were authorized to seize the Defendant for a state offense. The Defendant briefed the question. *See* ECF No. 38 at 8–9. The government did not. A motion for reconsideration is not a proper vehicle for raising new issues. *See Resolution Trust Corp. v. Holmes*, 846 F. Supp. 1310, 1316 (S.D. Tex. 1994) (noting that reconsideration is not "the proper vehicle for rehashing old arguments or advancing theories of the case that could have been presented earlier.").

Finally, the government challenges the dismissal of the indictment for outrageous government conduct, arguing that the Defendant's role in the offense was more than "passive." *See*

---

[4] As stated above, the Court finds that the assertion of officer safety and totality of the circumstances articulated by the agents was unworthy of credence.

8

ECF No. 65 at 11. The government is wrong. The standard requires, in relevant part, that the defendant did not actively participate in the offense, and cases finding active participation involves lengthy episodes where the defendant makes multiple decisions to stay involved in a long-running crime over time. *See, e.g.*, *United States v. Gutierrez*, 343 F.3d 415, 421 (5th Cir. 2003); *United States v. Tobias*, 662 F.2d 381, 383–87 (5th Cir. 1981). The Court held that the Defendant did not actively participate in "forcible" resistance against an agent because the force at issue was SA Carl's. *See Williams*, 602 F.3d at 317–18 (reasoning that "physical contact *initiated by an arresting officer* [is not] '*forcibly*' initiated by the defendant and thus *[is not] proscribed by the statute*") (emphasis added).

The government further objects to the implication that the charges here offend due process because a grand jury found probable cause to indict the Defendant. *See* ECF No. 65 at 10 (citation omitted). But whether a grand jury found probable cause is plainly a separate issue from whether the government or its agents have engaged in outrageous conduct. Moreover, the indictment was presumably based on the government's misinterpretation of the legal bounds of 18 U.S.C. § 111, which the Court has already addressed at length.

In sum, the government cannot prove beyond a reasonable doubt that the Defendant "forcibly" resisted, opposed, or interfered with the officers' duties within the meaning of 18 U.S.C. § 111(a). The government cannot prove beyond a reasonable doubt that the Defendant inflicted SA Carl's scrape under U.S.C. § 111(b). The government has failed to state an offense or basis for a penalty enhancement under 18 U.S.C. § 111. The officers engaged in constitutionally excessive force. The government's conduct in this case has been outrageous.

For the foregoing reasons, the Government's motion to reconsider the Court's dismissal of the indictment (ECF No. 65) is **DENIED**.

It is so **ORDERED**.

**SIGNED** this 8th day of December, 2025.

                                                  _____
                                                  XAVIER RODRIGUEZ
                                                  UNITED STATES DISTRICT JUDGE